Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff Jonathan L. Knapp*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan L. Knapp,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Maricopa County, Arizona, Paul Penzone in his official capacity as Maricopa County Sheriff, Joe Arpaio, Jerry Sheridan, Ben Henry, David Trombi, Paul Chagolla, Ken Holmes, Timothy Campbell, Steve Bailey, and Stephanie Molina,<br><br>　　　　　　Defendant. | **ORIGINAL COMPLAINT** |

Plaintiff Jonathan L. Knapp alleges as follows:

## INTRODUCTION

1. This case is about employment retaliation experienced by Sergeant Jonathan L. Knapp of the Maricopa County Sheriff's Office after he provided truthful testimony as a witness in the Title VI discrimination case of *Ortega Melendres v. Arpaio*, 2:07-cv-02513-GMS-PHX related to identification materials in the County's possession. Sergeant Knapp experienced retaliatory discipline, overlong IA investigations, denial of promotion, and denial of pay increases. Through five counts of federal statutory violations, Sergeant Knapp seeks declaratory and injunctive relief, compensatory damages against all defendants, with punitive damages claims against the individual Defendants.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§



1331 and 1343. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1343, 2201 and 2202, and to award attorneys' fees under 42 U.S.C. § 1988.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff **Jonathan Knapp** is a Sergeant with the Maricopa County Sheriff's Office. He is a resident of Maricopa County, Arizona.

5. Defendant **Maricopa County, Arizona**, is a political subdivision of the State of Arizona that can sue and be sued in its own name. Maricopa County programs and activities, including the Maricopa County Sheriff's Office (MCSO), received federal financial assistance – in some cases directly related to employment – from, *inter alia*, the Department of Justice and the Department of Homeland Security at all relevant times herein. The County is therefore legally required to conduct its programs and activities in a racially and ethnically non-discriminatory manner and to refrain from retaliation against employees who engage in protected activity.

6. Defendant **Paul Penzone** is the Maricopa County Sheriff and is sued solely in his official capacity for purposes of obtaining injunctive relief. In his capacity as Sheriff, Penzone has ultimate authority over the retaliatory employment decisions currently affecting Sergeant Knapp.

7. Defendant **Joe Arpaio**, is a resident of Maricopa County and the former Maricopa County Sheriff. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at this Defendant's instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

8. Defendant **Jerry Sheridan** is a resident of Maricopa County and a former MCSO Chief Deputy. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the

retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

9. Defendant **Ben Henry** is a resident of Maricopa County and a current or former MCSO Chief Deputy. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

10. Defendant **David Trombi** is a resident of Maricopa County and a former MCSO Chief Deputy. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

11. Defendant **Paul Chagolla** is a resident of Maricopa County and a current or former MCSO Deputy Chief. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

12. Defendant **Ken Holmes** is a resident of Maricopa County and a current or former MCSO Deputy Chief. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the

retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

13. Defendant **Timothy Campbell** is a resident of Maricopa County and a current or former MCSO Captain. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

14. Defendant **Steve Bailey** is a resident of Maricopa County and a current or former MCSO Captain. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at his instruction or on his behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

15. Defendant **Stephanie Molina** is a resident of Maricopa County and a current or former MCSO Captain. Upon information and belief, the retaliatory employment decisions affecting Sergeant Knapp were made at her instruction or on her behalf by one or more of the other Defendants. Alternatively, this Defendant conspired with one or more of the other Defendants to retaliate against Sergeant Knapp. Alternatively, this Defendant had the power to prevent the retaliation against Sergeant Knapp and failed or refused to prevent the retaliation, despite having advance knowledge of the retaliation.

**FACTUAL ALLEGATIONS**

**Background**

16. Sergeant Knapp has been employed by the MCSO since 1999.

17. He promoted to Sergeant in 2004.

18. During the course of his employment, Sergeant Knapp received Fraudulent



Identification Recognition training – discerning authentic IDs from the fake – through the Arizona Department of Motor Vehicles.

19. After his training, Sergeant Knapp sought and received permission from MCSO to prepare to teach a class to fellow officers on ID authentication.

20. Part of his preparation included procurement of confiscated IDs (some genuine, some fake) from the MCSO Property and Evidence Division

21. Sergeant Knapp followed official channels to request seized IDS and MCSO issued him 1,459 IDs (in three or four trips to Property and Evidence Division), which he kept organized in binders in preparation for the class.

22. The IDs were otherwise scheduled for destruction by MCSO had they not been issued to Sergeant Knapp.

23. Though he requested to teach the class several times, the MCSO never authorized or scheduled Sergeant Knapp to actually teach the class, and he went on to perform other duties as assigned.

24. In 2007, Sergeant Knapp was certified to perform certain functions as an immigration officer pursuant to a Memorandum of Agreement between Immigration and Customs Enforcement (ICE), pursuant to 8 U.S.C. § 1357(g) (a.k.a "287(g)).

25. Sergeant Knapp kept the ID binders in the office to which he was assigned as 287(g) personnel until MCSO lost its 287(g) certification in 2009.

26. The ID binders then remained (forgotten) in his possession until July 2015.

**Ortega Melendres Lawsuit**

27. In 2007, Hispanic individuals filed a Title VI class action lawsuit in this Court - *Ortega Melendres v. Arpaio*, 2:07-cv-02513-GMS-PHX – against, *inter alia,* Maricopa County, the MCSO, and Defendant Arpaio, alleging racial discrimination by recipients of federal funds.

28. During the course of that lawsuit, a federal monitor was appointed to ensure compliance with this court's orders.

29. According to Court findings (See Doc. 1677 in *Ortega Melendres*), the MCSO and some of the Defendants in this matter were slow to respond to discovery obligations, and acted in



5

bad faith related to requests for IDs and other documents seized by the MCSO related to the *Ortega Melendres* lawsuit.

30. Pursuant to the Court, the MCSO conducted various searches for withheld IDs and other documents in 2014 and 2015.

31. The MCSO also issued a bulletin in April 2015 regarding the handling of newly-seized IDs.

32. In 2015, Sergeant Knapp was cleaning and realized that he still had the IDs in his possession.

33. He also realized that he was likely never going to be able to teach the class for which he had procured the IDs in the first place.

34. Being generally aware of the *Ortega Melendres* lawsuit, he realized that he needed to return the IDs to MCSO.

35. While he had read the MCSO bulletin regarding newly-seized IDs, he did not associate the bulletin with his ID binders, since those had been previously issued to him by MCSO – not seized by him in the line of duty.

36. Sergeant Knapp contacted Property and Evidence in order to find out the process filled out the necessary form to return the IDs in his possession.

37. After some delay, the Director of Property and Evidence, John Shamley, instructed Sergeant Knapp to complete a "departmental report" (DR) form identifying the ID documents and submit them to Property and Evidence.

38. He prepared the form, and placed it and the IDs into the Property and Evidence Locker at the South Court Tower on or about July 7, 2015.

39. On the same day, Sergeant Knapp's supervisor Defendant Captain Timothy Campbell instructed him to write a memorandum regarding his possession of the IDs.

40. Sergeant Knapp was then contacted by Sergeant Bone, an investigator with the Professional Standards Bureau (a.k.a PSB, or, commonly, Internal Affairs or IA), who instructed that Sergeant Knapp bring him the IDs and the prepared form

41. Sergeant Knapp complied.

42. On July 8, 2015, Defendant Captain Steve Bailey of the PSB issued a "Notice of Investigation" to Sergeant Knapp, alleging that Sergeant Knapp was "in possession of identification cards in violation of Office policy."

43. Sergeant Bone was assigned to the investigation of Sergeant Knapp.

44. On July 15, 2015, Sergeant Bone interviewed Sergeant Knapp for the PSB, which interview was recorded by audio and video.

45. On July 30, 2015, Sergeant Knapp was formally interviewed by the court-appointed monitors in the *Ortega Melendres* case, to whom he provided information regarding the IDs as generally described above.

46. On September 1, 2015, the Plaintiffs in the *Ortega Melendres* case noticed Sergeant Knapp's deposition in that case (Doc. 1291).

47. Sergeant Knapp gave his deposition in that case on September 21, 2015.

48. The Court in that case used, *inter alia*, the issue of these IDs (which the Court termed the "Knapp IDs), Knapp's testimony, the MCSO's failure to disclose them timely, and various other MCSO actions regarding these IDs, to issue post-judgment contempt findings against then-Sheriff Arpaio, Defendant Sheridan and others on May 13, 2016 (Doc. 1677).

49. In those Findings, the Court explicitly found that "There is no MCSO policy prohibiting the promotion of an officer who is under investigation for misconduct." (Doc. 1677 at 154 #873; *and see id.* at 87 #499 & 500).

50. The Court referenced individual employees of the MCSO, including Defendant Trombi, who were promoted in the midst of disciplinary investigations.

**Retaliation**

51. On or about March 2015, the MCSO posted job openings for a lieutenant position.

52. The lieutenant rank is higher than sergeant, and comes with a pay raise and increased authority in the MCSO.

53. The job posting required an application and an exam for qualified applicants.

54. Sergeant Knapp met all required qualifications.

55. Sergeant Knapp submitted an application and took the exam.



56. The MCSO posted the results on or about July 8, 2015.

57. Sergeant Knapp placed seventh out of 30 applicants for the position.

58. When promoting for open positions, by official policy and practice, the MCSO starts with the highest score in the applicant pool and works its way down.

59. Once ranked on a promotion list, by official policy and practice, the MCSO leaves the ranked individual in that position on the list until all positions are filled, or until the list is "killed" and replaced with a new list.

60. For example, Sergeant Knapp had previously applied for the Lieutenant promotion in 2013 (placing eighteenth on the list).

61. For the 2013 list, MCSO promoted rankings 1 through 16 only.

62. Sergeant Knapp stayed on that 2013 list for two years until it was "killed" by the new posting in 2015.

63. On August 28, 2015, the MCSO promoted only applicant #1 in the first "promotional pull" from the new 2015 promotional roster.

64. On or about May 9, 2016, Defendant Chief Deputy David Trombi personally called Sergeant Knapp and notified him that he was going to be passed over for promotion, without a specific reason given.

65. Defendant Trombi is also featured (unfavorably) in the *Ortega Melendres* Findings of Fact document cited previously herein (Doc. 1677).

66. Upon information and belief, Defendant Trombi also had input into the decision to skip Knapp for promotion, which took effect on May 20, 2016.

67. On **May 20, 2016**, the MCSO promoted applicants #3-10 in the second promotional pull; however, MCSO skipped the individual ranked #2, then Sergeant Knapp (#7), then the individual who ranked #9.

68. On September 23, 2016, MCSO promoted applicants #11-17, skipping the individual who ranked #16, <u>and</u> the rest of the previously-skipped individuals, including Knapp.

69. MCSO employees received a 2.49% pay raise effective July 4, 2016.

70. Sergeant Knapp did not receive the pay raise.



71. MCSO's excuses for the failure to promote Sergeant Knapp and the failure to grant the pay raise were the "open IA investigation" that had begun against Sergeant Knapp on July 8, 2015.

72. MCSO's official investigation policy (adopted pursuant to ARS § 38-1110) requires all disciplinary investigations to be completed within 180 days, unless an exception is granted by the Chief Deputy or his designee, with reasons for the exception put into writing.

73. In July 2016, Sergeant Knapp filed a grievance related to the failure to grant the pay increase and the failure to conclude the IA investigation within 180 days, with no written exception granted in writing by the Chief Deputy or his deisgnee.

74. The grievance was reviewed and rejected all the way up Sergeant Knapp's chain of command by Defendants Captain Campbell, Deputy Chief Chagolla, and Chief Deputy Sheridan.

75. Sergeant Knapp did not receive any action from the MCSO PSB until November 2016, when he was notified by Defendant Captain Molina (reviewed by Defendant Deputy Chief Holmes) that he would receive a written reprimand related to his possession of the IDs.

76. The reprimand was issued by Defendant Deputy Chief Holmes on November 27, 2016.

77. Sergeant Knapp immediately followed administrative procedures to grieve the written reprimand.

78. The grievance was reviewed and rejected all the way up Sergeant Knapp's chain of command, this time ending with Defendant Chief Deputy Henry.

79. Upon information and belief, Defendants' reasons for the overlong IA investigation, the written reprimand, the failure to promote, the failure to give a pay increase, and the rejection of the grievances for the same, were all pretextual for the real reason: that Sergeant Knapp had testified truthfully as witness in connection with the *Ortega Melendres* case, and his testimony had caused embarrassment to the MCSO and one or more individual Defendants, including those found in contempt by the Court in that case.

80. On October 27, 2016, Sergeant Knapp filed formal civil rights complaints with the Department of Homeland Security and two offices within the Department of Justice related to the



1 actions of the Defendants.

81. On or about January 4, 2017, Defendant Penzone was sworn in as the new Sheriff of the MCSO – a position that he still holds.

82. On January 12, 2017, Sergeant Knapp received notification from Defendant Deputy Chief Ken Holmes that he was under investigation anew; this time related to his announced desire to be a candidate for public office in Oregon in the fall of 2018 after his intended retirement date from MCSO.

83. Sergeant Knapp's desire to run for office in Oregon in the fall of 2018 was long-known to the MCSO, having even been the subject of an email between him and Defendant Trombi back in March 2015.

84. Upon information and belief, the reason for the new investigation was either a) to further the retaliatory efforts to prevent Sergeant Knapp from future promotions and pay raises; and/or b) to retaliate for his filing of the formal complaints with Homeland Security and DOJ.

85. Sergeant Knapp was interviewed by PSB related to these new allegations on January 31, 2015.

86. However, February 9, 2017, Defendant Deputy Chief Holmes notified Sergeant Knapp that the new IA allegations would not be sustained and no discipline would be issued.

87. All conditions precedent to this suit have been satisfied or excused, and all administrative remedies have been exhausted as more than sixty days has passed since the filing of the civil rights complaints with Homeland Security and DOJ.

**FIRST CLAIM: RETALIATION UNDER TITLE VI**
**(Maricopa County and Penzone)**

88. Plaintiff incorporates herein all preceding allegations.

89. Defendants Maricopa County and Penzone (in his official capacity as Sheriff) were recipients of federal funds from Homeland Security and the DOJ, including funds related to employment, at all relevant times.

90. Plaintiff was a witness in a Title VI (42 U.S.C. § 2000d) lawsuit, *Ortega Melendres*, involving allegations of racial discrimination against these Defendants.



91. In addition to the anti-retaliation provisions implicit within 42 U.S.C. § 2000d, the regulations of Homeland Security and Department of Justice explicitly forbid retaliation for testifying or participating in any manner in a Title VI proceeding. 6 C.F.R. § 21.11(e) (Homeland Security) and 28 C.F.R. § 42.107(e)(DOJ).

92. Plaintiff's cooperation with and participation in the investigation and Title VI lawsuit constituted protected activity, of which these Defendants were aware.

93. These Defendants took a significantly adverse action against Plaintiff because of his protected activity.

94. This adverse action caused Plaintiff to suffer harm, including the failure to gain a promotion and salary increase, a general pay raise, and much administrative aggravation related to the two IA investigations and grievance processes.

95. These Defendants' actions are without justification or excuse.

96. These Defendants' actions are continuing and will likely continue unless injunctive relief is granted by the Court.

## SECOND CLAIM: RETALIATION UNDER JSIA
### (Maricopa County and Penzone)

97. Plaintiff incorporates herein all preceding allegations.

98. Defendants Maricopa County and Penzone (in his official capacity as Sheriff) were recipients of federal funds from the DOJ, including funds under the Justice System Improvement Act of 1979 (JSIA), 42 U.S.C. § 3781, *et seq.*

99. Plaintiff was a witness in a Title VI (42 U.S.C. § 2000d) lawsuit, *Ortega Melendres*, involving allegations of racial discrimination against these Defendants.

100. In addition to the anti-retaliation provisions implicit within 42 U.S.C. § 3789d, the implementing regulations of the DOJ explicitly forbid discriminatory employment practices. 28 C.F.R. § 42.203.

101. Plaintiff's cooperation with and participation in the investigation and Title VI lawsuit was protected activity, of which these Defendants were aware.

102. These Defendants took a significantly adverse action against Plaintiff because of his



11

protected activity.

103. This adverse action caused Plaintiff to suffer harm, including the failure to gain a promotion and salary increase, a general pay raise, and much stress and administrative aggravation related to the two IA investigations and grievance processes.

104. These Defendants' actions are without justification or excuse.

105. These Defendants' actions are continuing and will likely continue unless injunctive relief is granted by the Court.

### THIRD CLAIM: DUE PROCESS VIOLATION
### (All Defendants)

106. Plaintiff incorporates herein all preceding allegations.

107. Defendants, acting under color of state law and in concert with one another, engaged in a denial of Plaintiff's due process.

108. Specifically by continuing and permitting an IA investigation beyond the 180-day time limit imposed by state law, without substantive reason for extending the investigation, and by failing to promote Plaintiff in order, and by denying Plaintiff a general pay increase paid to other employees, Defendants deprived Plaintiff of due process.

109. Additionally, the Defendants promoted other employees (including Defendant Trombi) while those employees were the subject of an IA investigation, while at the same time refusing to promote Plaintiff.

110. Defendants, acting under color of state law and in concert with one another, exceeded and/or abused the authority granted to them under state and federal law.

111. Defendants have acted pretextually, without legitimate reasons for their deprival of Plaintiff's due process rights.

112. Defendants have thus deprived Plaintiff the due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

113. Defendants' actions have caused and, unless restrained or enjoined by the Court, will likely continue to cause Plaintiff harm, including financial damages.

114. Additionally, the individual Defendants' (excepting Penzone) conduct was due to

evil motive or intent towards Plaintiff, and/or it involved reckless or callous indifference to Plaintiff's federally protected rights.

115. As a result, Plaintiff is entitled to an award of punitive damages from the individual defendants.

**FOURTH CLAIM: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

**(Individual Defendants Except Penzone)**

116. Plaintiff incorporates herein all preceding allegations.

117. 42 U.S.C. § 1985(3) grants a private right of action for damages if, under 42 U.S.C. § 1985(2) "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified paragraphs of this Complaint as if fully set forth herein."

118. Two or more of all of the individual Defendants in this case (except new Sheriff Penzone sued only in his official capacity) have conspired to injure Plaintiff on account of his having testified in the *Ortega Melendres* case.

119. The Defendants' conspiracy, and continuing actions taken in furtherance thereof, have caused Plaintiff damages, and will likely cause damages in the future.

120. Additionally, the individual Defendants' (excepting Penzone) conduct was due to evil motive or intent towards Plaintiff, and/or it involved reckless or callous indifference to Plaintiff's federally protected rights.

121. As a result, Plaintiff is entitled to an award of punitive damages from the individual defendants.

**FIFTH CLAIM: FAILURE TO PREVENT INTERFERENCE**

**(Individual Defendants Except Penzone)**

122. Plaintiff incorporates herein all preceding allegations.

123. 42 U.S.C. § 1986 grants a private cause of action for damages as follows:



Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

124. Each of the individual Defendants in this case (except new Sheriff Penzone sued only in his official capacity) had the knowledge of the retaliation against Plaintiff because of his testimony in connection with the *Ortega Melendres* case.

125. Each of the individual Defendants in this case (excepting Penzone) had the power to prevent or aid in the prevention of the retaliation and either neglected or refused to do so.

126. As a result of the individual Defendants' neglect or refusal, Plaintiff suffered damages, which will likely continue into the future.

127. Additionally, the individual Defendants' (excepting Penzone) conduct was due to evil motive or intent towards Plaintiff, and/or it involved reckless or callous indifference to Plaintiff's federally protected rights.

128. As a result, Plaintiff is entitled to an award of punitive damages from the individual defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against Defendants awarding the following:

A. A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants have engaged in retaliation in violation of the federal statutes 42 U.S.C. 2000d, 42 U.S.C. § 3789d, 42 U.S.C. § 1985, and 42 U.S.C. § 1986;

B. A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that the Defendants have deprived Plaintiff of due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983;

C. Injunctive relief pursuant to 28 U.S.C. § 1343 against Maricopa County and Paul Penzone



from continuing any retaliatory actions against Plaintiff;

D. Compensatory damages, jointly and severally, from all Defendants;

E. Punitive damages against the Defendants (except Maricopa County and Penzone) within constitutional limits;

F. An award of attorneys' fees and costs of suit, plus interest, pursuant to 42 U.S.C. § 1988; and

G. Such other relief as the Court deems just and proper.

Respectfully submitted on this 18th day of May, 2017,

Joshua Carden Law Firm, P.C.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorney for Plaintiff*
*Jonathan L. Knapp.*

